FANNIE E. DECKER, appellant,

*v.*

EDWARD WILSON et al., respondents.

</div>

Where a mortgage is taken for a *bona fide* debt and there is no fraud about the transaction in its inception, the fact that the mortgagee took possession of the premises and permitted the mortgagor, who was her brother-in-law, to

Decker v. Wilson.

remain upon the premises and manage the farming, and receive a portion of the proceeds of the farm, will not be such evidence of fraud as will postpone her mortgage to debts subsequently incurred by the mortgagor. The extent of her liability to creditors will be to account for the proceeds of the premises as a credit upon her mortgage.

---

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

On the 1st day of December, 1876, the defendant, Edward Wilson, gave his bond to the complainant for $3,000, and also a mortgage upon the real estate described in the bill to secure the payment of the money mentioned in the bond. The mortgage was not recorded, and the reason now assigned for that omission is, that the wife of the mortgagor has not joined in the execution of it. In December, 1878, this mortgage was surrendered, and Wilson executed another to complainant on the same premises, in which his wife united, and which was at once recorded.

At the time of the execution of the last-named mortgage, three of the creditors of Wilson had commenced actions against him for the recovery of judgments on their claims, and soon thereafter several judgments were obtained against him; upon these executions were issued, and all the interest of Wilson in the mortgaged premises was sold and conveyed to the defendant Adams.

Miss Decker has filed her bill to foreclose her mortgage. Adams, having purchased the equity of redemption, and being a party defendant, attacks her mortgage, and insists that the transaction is a fraudulent one, in and by which the mortgagor and mortgagee conspired to hinder and delay the creditors of Wilson.

If the purchaser prevails over the mortgagee, it must be because of the manner in which she has assisted the mortgagor in his management of the premises, since the execution of the mortgage.

A few facts will lay the foundation for the equitable relief which is accorded in such cases, when the provisions of the statute have been infringed. Wilson was debtor to the com-

plainant in the sum of $1,500 and over, and to his wife in a still larger sum. Miss Decker gave her note to Wilson's wife for $1,500, and then took a mortgage from Wilson for $3,000. Miss Decker is a sister of Mrs. Wilson and is about fifty years old, and has lived with her very much the greater portion of her life. There was no accounting between Miss Decker and Wilson, nor between Wilson and his wife, although I believe that he was justly indebted to each one in the sum of $1,500 and more, and the fact that it was more is the reason of my calling attention thereto, for it seems to me that if complainant was so particular as not to record the mortgage first given because the wife had not joined therein, from an honest purpose to secure her all of her own rights, she would have been equally particular to have had her entire claim included in this bond and mortgage. Nor can I learn from the case that that balance has ever been in any manner ascertained or acknowledged, except that there was a considerable balance; and the same is true of the wife's claim— she surrendered more than $1,500 worth of claims, without in any way having the balance properly recognized by her husband. Such matters are of some, though not of controlling, importance.

There was a prior mortgage of $3,500 on the land, and Miss Decker insists that, at the time she accepted her mortgage, the premises were worth at least $900 more than both mortgages. At the time of the execution of the mortgage, Miss Decker, the mortgagor and his wife were living on the premises, and had been for several years. Immediately after the execution and delivery of the mortgage, Miss Decker was let into possession of the mortgaged premises, or at least there was some understanding that she was to have the management of the farming business. Both she and Wilson declare that this was the understanding—the possession was to be hers.

But we shall be obliged to look further to ascertain what the real understanding was. This branch of the case is very important. They claim that complainant took possession as mortgagee under her mortgage. Yet everything was managed the same as before, except that Wilson did a greater part of the dealings

Decker v. Wilson.

which he had with other men, though not all, in the name of Fannie Decker. There is not the slightest room for doubt but that Wilson carried on the farming business according to his own liking, in all respects as he had done before the alleged surrender. This is most conclusively shown by the fact that, up to the time of filing this bill, he never accounted, nor was he ever asked to account. All the proof that there is in the case that the parties ever had any regard to the fact that the relation of debtor and creditor existed between them, from the 1st day of January, 1879, until this suit, was the endorsement of $150 on the bond, in the year 1884; and this, not on account of rents and profits, but of other transactions. Miss Decker, the mortgagee, so in possession under her mortgage, not only never accounted, but no pretence of an account was ever kept. Certainly, this method, between these parties, is of great importance.

But, there was not only no account kept on either side, nor any settlement made at the end of each year, but the management was of such a nature as to render a settlement, on anything like a fair basis, and with certainty of correctness, absolutely impossible. As already stated, Wilson, his wife and daughter, and whatever servants were required, continued to live in the dwelling on the premises, together with Miss Decker, the mortgagee, just as they had all lived for many years previously. There was no charge made against any one, nor was there any credit claimed. Whatever Wilson willed to do, he did, and also the contrary. If Miss Decker had the formal possession, he had the control. If the concern was run in her name, it was run according to his wishes.

Now, why was all this done in such total disregard of order and of all precedent? Another important fact has appeared which will help to answer this and other inquiries as well. When Wilson was asked if his object in giving this mortgage was not to protect his home for himself and wife from his other creditors, his reply was, " Yes, sir; it was," and this, I think, is at the foundation of the controversy, and tends to explain the ambiguous conduct of the parties in their mixed possession. As stated, he transacted most of the business with others, and when

checks or notes or receipts were given, the most of them were in the name of Fannie Decker, but, yet, by no means all; the exceptions being so many as to show that he was not bound at all. Wilson did all the work without command or contract, made all sales without advice with or permission from anybody, and accepted all profits, only to employ or to expend them again as he might desire.

. I conclude that all of these circumstances, those that took place at the time of the transaction and also those which took place afterwards, may be taken into consideration in determining the question of fraud. *Forbes* v. *Wallar, 25 N. Y. 430.* When the light of these subsequent dealings falls upon what took place at the giving of the original mortgage, and the substitution of the second one for that, after several creditors had brought their actions at law against Wilson, the conclusion irresistibly follows that the scheme was then formed, of which all that took place afterwards was but a part, and that the persons who could become such willing instruments of Wilson as to take the possession of his farm, for his benefit, were equally willing to take the initial step towards making that possession effectual to that end. It will not do for Miss Decker to say that she knew nothing about the designs of Wilson. She lived in his family, and must have known of his financial embarrassments, for it would be quite preposterous for any other conclusion to be expressed after several suits had been commenced against him, and both Miss Decker and Mrs. Wilson knew how heavily Wilson was indebted to them, and that he had made no reduction of the amounts so due to them.

I conclude that the whole purpose of this transaction was to hinder and delay the creditors of Wilson in the collection of their claims. The manner in which Miss Decker managed her pretended possession shows this. If she was let into and took possession for an honest purpose—the payment of her mortgage—why did she not, then, from the first, pursue that intent and keep and render an account? She claims that, when she took the mortgage and the possession, there was an equity of $900 in the property; why did she not then keep down the interest on her

Decker *v.* Wilson.

mortgage by a proper accounting every year, instead of allowing the interest to accumulate until all of this equity was more than absorbed? To my mind, the only answer at all satisfactory is, that the parties to the transaction, from the beginning, intended to work together for the purpose of protecting each other in the possession against all of Wilson's creditors.

The complainant having declared that she took and held the possession as mortgagee, her counsel saw what the legal consequences were; saw that she must account; saw that judgment creditors could compel this, and at once tendered himself ready to account. But does the case rest on the accounting? Not if I am right in the views which I have expressed. If Miss Decker was a participant in this fraud, then her whole case must perish with the fraud. Parties are not allowed to reap any benefit from their own fraud.

It was said on the argument that Adams, the purchaser of the equity of redemption at the sale by the sheriff, is chargeable with laches in asserting this fraud. This cannot prevail in this case. This defendant, Adams, who assails this mortgage, not only stands in the place of the mortgagor, but also enjoys the rights of a judgment creditor. In such case, time is no bar until the period fixed by statute has fully run. See *In re Maddever, L. R. (27 Ch. Div.) 523.*

I conclude that the mortgage of the complainant is fraudulent and void. I will so advise, with costs.

*Mr. A. W. Slockbower* and *Mr. L. Van Blarcom,* for the appellant.

*Mr. Lewis J. Martin* and *Mr. James F. Conklin,* for the respondents.

The opinion of the court was delivered by

Van Syckel, J.·

The evidence clearly shows that the mortgagor owed the appellant, who was complainant below, the amount for which she took her mortgage.

Decker v. Wilson.

The bond is dated December 1st, 1876, and a mortgage of the same date was given to secure it.

That mortgage was not signed by mortgagor's wife, and was taken up and a new mortgage given December 31st, 1878, to secure the bond of December 1st, 1876.

The mortgagor then owed only about $200, except a prior mortgage of $3,500 on the same premises. There is an absence of evidence to show that there was any fraud about this transaction in its inception, or that there then existed any purpose to protect the mortgagor against any indebtedness he intended to incur in the future.

The mortgagee took possession of the mortgaged premises under her mortgage, but she was liable to an accounting at the suit of creditors at all times. The fact that she continued in possession and permitted the mortgagor, who was her brother-in-law, to remain upon the premises and receive a considerable portion of the proceeds of the farm, will not postpone her mortgage to debts subsequently incurred by the mortgagor. The extent of her liability to creditors will be to account for the proceeds of the premises as a credit upon her mortgage.

The complainant's mortgage is valid. An account should be taken.

The complainant's mortgage is $3,000; add interest from December 1st, 1876, at seven per cent.; the complainant should be charged with the rents of the premises from January 1st, 1879, at $350 per year. From the rents deduct seven years' interest paid on the prior mortgage of $3,500, being $210 each year; also deduct taxes, at the rate of $37 per year, for eight years; deduct, also, from complainant's mortgage, payment endorsed March 20th, 1885, of $155; also deduct taxes paid on her mortgage for the years 1885, 1886 and 1887, being $27 each year.

There must be a reversal, and a reference to a master to take an account in accordance with the above statement, and to report priorities between the subsequent encumbrancers, as well as the amount due to each.

*Decree unanimously reversed.*